**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP**
HELEN I. ZELDES (SBN 220051)
hzeldes@sshhzlaw.com
JOSHUA A. FIELDS (SBN 242938)
jfields@sshhzlaw.com
AMY C. JOHNSGARD (SBN 279795)
ajohnsgard@sshhzlaw.com
AYA DARDARI (SBN 344039)
adardari@sshhzlaw.com
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4990
Facsimile: (310) 399-7040

*Attorneys for Plaintiff Jaci Mitchell, individually and on behalf of all others similarly situated.*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jaci Mitchell, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KLC San Diego Enterprises, Inc. dba Keller Williams San Diego Metro; Southbay Passive Income, Inc. dba Keller Williams South Bay; Keller Williams, Inc.; Keller Williams Realty, Inc. aka Keller Williams Realty International; and DOES 1 to 10;<br><br>Defendants. | Civil Case No.: **'24CV0647 CAB MMP**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Jaci Mitchell ("Plaintiff") brings this action, on behalf of herself and all others similarly situated, against Keller Williams, Inc.; Keller Williams Realty, Inc. aka Keller Williams Realty International; KLC San Diego Enterprises, Inc. dba Keller Williams San Diego Metro ("Keller Williams San Diego"); and Southbay Passive Income, Inc. dba Keller Williams South Bay ("Keller Williams South Bay") (collectively "Defendants" or "Keller Williams").  Plaintiff alleges the following based upon information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to herself.

## I. NATURE OF THE CASE

1. Keller Williams is an international real estate franchise. Founded in 1983 by Gary Keller and Joe Williams, it is the largest real estate franchise in the United States by sales volume as of 2022.

2. Plaintiff Jaci Mitchell was a Keller Williams agent and Team Leader for almost 12 years. Her interest in the Keller Williams Profit Share Plan ("Profit Sharing Program") vested long ago.  Until a recent change, Keller Williams incentivized its agents by promising vestiture after 3 years. Keller Williams unambiguously promised, "The more people you bring to Keller Williams, the more profits you share. The best part is you are vested after 3 years and the <u>profits continue to come in for your lifetime</u>. Profit share is even willable to your heirs! How cool is that??"[1]

3. Keller Williams aggressively markets its unconventional business model to prospective agents to lure them away from other brokerages. It touts a "win win" model where rather than "spending millions of dollars a year promoting our company via advertising…we let our associates be our walking billboards."[2]

4. Keller Williams has realized substantial gains by attracting agents and incentivizing them to stay for many years and to bring more agents on board. It's definitely helped. Keller Williams is now the largest real estate company in the world

---

[1] https://www.youdrivethesuccess.com/keller-williams-profit-share/, accessed 12/8/23.
[2] https://www.youdrivethesuccess.com/keller-williams-profit-share/, accessed 4/4/24.

and is making waves across the oceans to new countries."[3]

5. Keller Williams' Profit Sharing Program promises its vested agents a stake in the success of the company that translates to passive income for eligible agents' lifetimes and beyond. Indeed, the company advertises their agents' vested interest in the Program can be left to their beneficiaries. The following quote was from the Keller Williams website, *youdrivethesuccess.com*:

> The more people you bring to Keller Williams, the more profits you share. The best part is you are vested after 3 years and the profits continue to come in for your lifetime. Profit share is even willable to your heirs! How cool is that??
>
> In other real estate business models, you're lucky to get a coffee mug with your broker's logo on it for helping grow their office. That's the difference. It's their office, their profits. At Keller Williams, it's our office, our profits!
>
> To put this in perspective, the top agent with KW receives over $1M a year in passive income from Keller Williams profit share. Not too bad for referring agents to the best real estate company to work for.

6. Keller Williams' website also describes the program as a retirement plan, a so-called "Exit Plan for Your Family." It represents vested agents "will continue to see profit share income for the rest of their lives. Then, the agent's heirs have full rights to that passive income stream for the remainder of their lives. It's the gift that keeps on giving!"[4]

7. Agents are encouraged and incentivized to recruit other agents to work for Keller Williams, thus growing their network similar to a multilevel marketing system. If an agent recruits another individual to work for Keller Williams, the recruiting agent will receive a percentage of that individual's contribution to the profits realized by the market center so long as that market center makes a profit.

---

[3] https://www.youdrivethesuccess.com/keller-williams-profit-share/, accessed 12/8/23.
[4] *Id.*, accessed 4/4/24.

8.  Each agent who sponsors another agent is promised 50% of the profit attributable to the activities of that new associate. They also receive incrementally smaller percentages of agents subsequently recruited by that associate, up to seven levels of agents.[5]

9.  This structure is advertised on Keller Williams' *dreamweaveragents.com* site:



10. Keller Williams' agents' vested interest in the Profit Sharing Program continued indefinitely, irrespective of whether they retired or left the company to work for another brokerage.

11. However, during the summer of 2023, Keller Williams, driven by its rivalry with eXp Realty and vengeance against agents who had defected to that brokerage, announced its intent to renege on its longstanding agreement with its hard-working agents. In or around August 2023, Keller Williams publicly stated that it would retaliate against agents already vested in the Profit Sharing Program who no longer

---

[5] https://outfront.kw.com/views/keller-williams-profit-share/, accessed on April 4, 2024.

worked at Keller Williams by massively reducing their vested profit share distributions in 2024 and beyond from 100% to a shocking 5%. Agents were presented with a choice: return to work for Keller Williams within six months, or be deprived of the passive income stream they had been promised would be the "gift that keeps on giving."

12. Ms. Mitchell thus brings this action for anticipatory breach of contract, anticipatory breach of the implied covenant of good faith and fair dealing, violation of California's Business & Professions Code §§ 17200, *et seq.* (the Unfair Competition Law or "UCL"), and for unjust enrichment.

## II.   JURISDICTION AND VENUE

13. This Court has personal jurisdiction over Keller Williams because Keller Williams has conducted and continues to conduct business in the State of California, and because Keller Williams has committed the acts and omissions complained of herein in the State of California.

14. This court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), as Plaintiff (Texas) and Keller Williams San Diego (California) and Keller Williams South Bay (California) are diverse, there are over 100 class members, and the amount in controversy exceeds $5 million.

15. This court has the authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Fed. R. Civ. Pro.

16. Venue is proper in the Southern District of California, because a substantial portion of the acts giving rise to this action occurred in this district. Keller Williams maintains substantial operations in this District, a substantial part of the events giving rise to the claims at issue occurred in this District, and Keller Williams San Diego entered into transactions with Plaintiff and putative class members and received substantial profits from Plaintiff and putative class members, many of whom Plaintiff is informed and believes reside in this District. Plaintiff was the San Diego interim Team Leader and

agent in San Diego, and Keller Williams San Diego's office continues to coordinate Plaintiff's Profit Share Program through the present.

### III.  PARTIES

17. Plaintiff Jaci Mitchell is a former resident of San Diego and Los Angeles, California who maintained her real estate license in the state through 2023. Ms. Mitchell is now a resident of Grand Prairie, Texas. Ms. Mitchell became a longtime Keller Williams agent in approximately 2004 first in Oregon, then in Arizona and later worked for Keller Williams South Bay (in the city of Torrance in the Greater Los Angeles area) as the South Bay Team Leader and finally for Keller Williams San Diego as an interim Team Leader and agent. Ms. Mitchell's profit share rights vested many years ago, in or around 2007, and she pays a $25 annual profit share participation fee to Keller Williams' San Diego office. Plaintiff receives substantial profit share payments from Defendants annually, based on the sales and profits of Keller Williams Market Centers she recruited sponsored agents to. Ms. Mitchell had seventy-seven Keller Williams agents under her while she was a Keller Williams agent, the bulk of them recruited as downlines under the Profit Share Program in California.

18. Defendant Keller Williams, Inc. is a corporation organized and existing under the laws of the state of Texas with its principal address in Austin, Texas. Keller Williams, Inc. does business nationwide, including in San Diego and throughout California.

19. Defendant Keller Williams Realty, Inc., aka Keller Williams Realty International is a corporation organized and existing under the laws of the state of Texas with its principal address in Austin, Texas. Keller Williams Realty, Inc. does business internationally, including in San Diego and throughout California.

20. Defendant KLC San Diego Enterprises, Inc. dba Keller Williams San Diego Metro is a corporation organized and existing under the laws of the state of California with its principal address in San Diego, California.

1  21. Defendant Southbay Passive Income, Inc. dba Keller Williams South Bay is a corporation organized and existing under the laws of the state of California with its principal address in Los Angeles, California.

22. Defendant Keller Williams Realty, Inc. is the largest realtor in the United States. It has offices in 100 cities throughout California, including Alameda, Alhambra, Anaheim Hills, Anaheim Hills/Yorba Linda, Antelope Valley, Bakersfield, El Segundo, Beverly Hills, Big Bear/Lake Arrowhead, Brentwood, Brentwood Estates, Burbank, Burlingame, Calabasas, Camarillo, Campbell/Silicon Valley, Capital Valley, Carlsbad, Carmel, Carmel by the Sea, Carmel Valley/Del Mar, Castro Valley, Central Coast/Pismo Beach, Chico, Chino Hills, Corona, Coronado, Costa Mesa, Covina, Cupertino, Danville, Diamond Bar/Rowland Heights, Downey, Downtown Los Angeles, East Palmdale, El Dorado Hills, Elk Grove, Encino/Sherman Oaks, Folsom, Fremont, Fresno, Glendale, Hanford, High Desert/Victorville, Hollywood Hills, Huntington Beach, Irvine, La Canada, Laguna Niguel-Laguna Beach, La Jolla, Lake Forest, La Mesa, Lake Elsinore, La Quinta, Larchmont, Livermore, Lodi, Long Beach Coastal, Long Beach Pacific Estates, Los Angeles Harbor, Los Angeles Miracle Mile, Los Angeles Westside, Los Feliz, Los Feliz North, Los Gatos Estates, Marina del Rey, Manteca, Merced, Modesto, Morro Bay, Newport Beach, Norco, North Tustin, Oak Hills, Oakland, Ojai, Ontario, Oxnard, Pacific Palisades, Palm Springs, Palm Springs Downtown, Palo Alto, Palos Verdes, Pasadena, Paso Robles, Petaluma, Pleasanton, Pleasanton/Livermore, Pleasanton/Tri-Valley, Pomona, Porter Ranch, Porterville, Ramona, Rancho Cucamonga, Redlands, Ridgecrest, Riverside Central, Roseville, Sacramento, Sacramento Metro, Salinas Valley, San Clemente, San Francisco, San Jose (3), San Mateo, Santa Barbara, Santa Clara, Santa Clarita, Santa Cruz, Santa Monica, Santa Rosa, Saratoga, Simi Valley, Sonora, Stockton, Studio City, Temecula, Torrance, Tracy, Truckee, Tulare, Upland, Vacaville, Visalia, Ventura, Walnut Creek, Westlake Village, Whittier, and Yuba City.

23. Keller Williams Realty. Inc. has five offices in San Diego County alone, in Carmel Valley, El Cajon, Downtown, Sabre Springs, and Mission Valley.[6]

### IV.   FACTUAL ALLEGATIONS

**A.   The Terms of the Keller Williams Profit Share Agreement**

24. In or around 2014, Plaintiff entered into an Independent Contractor Agreement with Keller Williams South Bay (the "Licensee") located at 23670 Hawthorne Boulevard, No. 100, in Torrance, California (the "IC Agreement").

25. Pursuant to the IC Agreement at ¶ 7(A), the Licensee agreed to engage Plaintiff as an independent contractor to assist with the purchase and sale of real estate for an indefinite period. Either party has the right to terminate the IC Agreement. However, termination of Plaintiff's association with the Licensee would specifically not terminate any of the continuing rights or obligations of either Plaintiff or the Licensee.  IC Agreement, ¶ 7(B).

26. Paragraph 3(D) of the IC Agreement sets forth Plaintiff's eligibility to participate in the Keller Williams Profit Sharing program.

27. The IC Agreement expressly incorporates Keller Williams' current Policies and Guidelines and provides: **"No change, amendment or waiver of any provision of this Agreement will be binding unless in writing and signed by both Agent and Licensee."** IC Agreement, ¶ 9(B)(emphasis added).

28. Keller Williams' Policies and Procedures incorporated into the IC Agreement set forth the details regarding its Profit Sharing Program, described as follows:

> **2.2.7   Profit Sharing—Unexpected Innovation**
> Few would disagree that the real estate agent is the foundation of a real estate company. Without them, there would be no company. Keller Williams goes further than any other real estate organization in recognizing the significance

---

[6] https://locations.kw.com/, last accessed April 3, 2024.

of this by offering an income opportunity unparalleled in the real estate industry.

Keller Williams was searching for an additional way to reward those associates who build the company. Unexpectedly, the result was the most significant compensation innovation in real estate history: An open-ended profit sharing program. This program allows Keller Williams associates, investors, brokers, Team Leaders, Market Center or KWRI staff, and Regional Directors to participate in the profits they help create without assuming any financial risks.

29. Pursuant to Paragraph 4.9.4.26.2, a recruiting sponsor such as Plaintiff would participate in the Keller Williams Profit Sharing Program by recruiting other associates who contribute to the profitability of Keller Williams at a Market Center (such as Keller Williams San Diego), and the profit sharing exists as long as there is production associated with the recruit in the "downline." That provision also provided the recruiting sponsor would receive a percentage of the downline recruit's closed sales.

30. Paragraph 4.9.4.27.3 of Keller Williams' Policies and Procedures further provided that after three years of Plaintiff's association with any Market Center, she "would be permanently vested in the Profit Sharing Program."

31. After becoming vested in the Profit Sharing Program, a Keller Williams associate such as Plaintiff was not required to continue to work as an associate with a Keller Williams Market Center (such as Keller Williams South Bay or Keller Williams San Diego) to remain in the Profit Share Program.

32. Furthermore, for individuals who were vested in the Profit Share Program, future payments under the program were payable to the estate or heirs of the vested participant through use of a designation or change of beneficiary form.

33. Only in the event of insolvency by Keller Williams would the Profit Sharing Program automatically terminate. Policies & Procedures, ¶ 4.9.4.27.5.

34. Pursuant to the Keller Williams Policies & Guidelines Manual, Keller Williams did not have the right to amend any aspects of the methods used to calculate the profit sharing distributions for a recruiting sponsor such as Plaintiff, except as per the specific direction of Keller Williams' International Associate Leadership Council ("IALC"), and any such amendment the IALC did make would not affect those profit sharing distributions earned by the sponsor for recruits brought into Keller Williams prior to the amendment.

35. On information and belief, the aforementioned Policies and Procedures relating to the Profit Sharing Program remained effectively unchanged during Plaintiff's 12-year active association with Keller Williams.

36. In or about 2017, Plaintiff left her position as an associate with Keller Williams and went to work for a competing real estate brokerage.

37. According to a 2019 report prepared by the Keller Williams Profit Share Task Force, in the prior year approximately $25 million to $40 million was paid in profit sharing distributions to non-Keller Williams participants who were directly competing with Keller Williams.

**B.   Keller Williams' Anticipatory Breach of the Profit Share Agreement**

38. On or about August 16, 2023, Keller Williams' IALC voted to change its Profit Sharing Program such that vested agents who joined Keller Williams before April 1, 2020, and who "actively compete" with Keller Williams' brokerages would have their profit share percentage paid slashed from 100% to 5%.

39. To induce vested participants to return to work with Keller Williams, the IALC included a provision that those participants could return to work with Keller Williams within six months of receiving notice that their Profit Sharing Program payment was to be drastically reduced and have the distribution reinstated to 100%.

9
**CLASS ACTION COMPLAINT**

40. This drastic change to the terms of the parties' agreements is scheduled to go into effect on July 1, 2024.

41. In or about December 2023, Plaintiff received a letter from Keller Williams San Diego requesting that Plaintiff pay her annual $25 renewal fee to participate in the Profit Sharing Program. Plaintiff could alternatively sign the enclosed letter to indicate she no longer wished to participate in the program. According to the letter, if Plaintiff failed to respond by December 20, 2023, she would automatically be removed from the program.

42. Shortly after she received the letter, Plaintiff promptly remitted payment in the amount of $25 to renew her membership in the Profit Sharing Program.

43. Despite the unambiguous contractual language, Plaintiff's vested interest in the Profit Sharing Program, and Plaintiff's compliance by promptly remitting annual payment of her renewal fees, Plaintiff is informed and believes that no later than July 1, 2024, based on Keller Williams' representations, that Keller Williams will unilaterally reduce her vested share in the Program from 100% of the distributions owed based on her recruits' performance to 5%.

C. **Keller Williams is No Stranger to Controversy**

44. In October 2022, former Keller Williams CEO John Davis filed a $300 million fraud claim against the company, seeking to recover damages stemming from allegations of unlawful misconduct within the company.[7]

45. On August 29, 2023, Davis filed a second lawsuit against Keller Williams and many of its employees, claiming the defendants engaged in illegal federal racketeering. The complaint details an "illegal and criminal-minded scheme" where Defendant Gary Keller and the other named defendants allegedly misrepresent franchise agreements, force franchises to pay for services through companies that John

---

[7] *Davis v. Dow et al.*, Case No. 4:22-cv-00970-O, Complaint ¶¶ 14-29.

1  Keller, the Vice Chairman owns or invests in, and retaliates against anyone who does not play along.[8]

46. The racketeering complaint alleges, "Gary Keller and [Keller Williams] consistently engage in conduct where they seek to target, punish and destroy those that attempt to go against Gary Keller… Defendants' pyramid scheme-type playbook pits franchisees against each other in a divide and conquer manner, where only Gary Keller comes out on top or wins."[9]

47. Davis attributes many of the decisions and allegedly fraudulent behavior to Gary Keller's fear of rival brokerage eXp, which had lower caps and was ascendant at the time that Davis claims Keller Williams began engaging in the alleged scheme. The complaint states, "Keller was fixated on eXp and could not stop talking about it." It further alleges Keller was enraged and paranoid because eXp was attracting at least some Keller Williams defectors and was founded by a former top Keller Williams agent. "When Keller feels that he has been slighted in any magnitude…he seeks to target and destroy that person at all costs, even if it would hurt his own people."[10]

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals (the "Class"), defined as follows:

> All persons with a Keller Williams anniversary date prior to April 1, 2020 who, within the Class Period, have vested in the Keller Williams Profit Share program and left Keller Williams and affiliated with any non-Keller Williams real estate brokerage company.

49. For pleading purposes, the Class Period is defined from the earliest date under the applicable statute of limitations through the date final judgment is entered in this action.

---

[8] *Davis v. Keller Williams Realty, Inc., et al.*, Case No. 1:23-cv-1017, Complaint ¶¶ 3-5.
[9] *Id.* at ¶ 9.
[10] *Id.* at ¶ 5.

11
**CLASS ACTION COMPLAINT**

50. Excluded from the Class are the judicial officers assigned to this litigation, members of their staff, and immediate families.

51. Plaintiff reserves the right to amend or modify the Class definition in connection with a motion for class certification or with the result of discovery.

52. **Numerosity.** At this time, Plaintiff does not know the exact number of Class members; however, given the nature of the claims and the number of Keller Williams agents in the United States, Plaintiff believes that the Class members are so numerous that joinder of all members is impracticable.

53. **Predominance of Common Issues.** There is a well-defined community of interest in the questions of law and fact involved in this case. The following questions of law and fact are common to the Class members and predominate over questions that may affect individual Class members:

 1. Whether Keller Williams has an obligation to pay the full 100% distribution to vested profit share members for ongoing performance by recruits they brought to Keller Williams;
 2. Whether Keller Williams has repudiated and/or anticipatorily repudiated that obligation;
 3. Whether Keller Williams' conduct constitutes an anticipatory breach of its express obligations under the profit sharing agreement;
 4. Whether Keller Williams' conduct constitutes an anticipatory breach of the implied covenant of good faith and fair dealing;
 5. The nature and scope of the remedy available to Plaintiff and other similarly situated profit share plan members, including but not limited to damages or equitable relief;
 6. Whether Keller Williams' conduct constituted an unfair practice under the UCL;

7. Whether Keller Williams was enriched as a result of the conduct alleged in this Complaint such that it would be inequitable for Keller Williams to retain the benefits conferred upon it by Plaintiff and the other Class members.

54. **Typicality.** Plaintiff's claims are typical of those of the Class because Plaintiff, like all Class members, has a vested interest in Keller Williams' Profit Share Program. Plaintiff's claims do not conflict with the interests of any other members of the Class. Plaintiff and the Class members were subjected to the same challenged course of conduct and have suffered and will suffer the same economic harm resulting from the actions taken by Keller Williams.

55. **Adequacy.** Plaintiff will fairly and adequately represent the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff is committed to the vigorous prosecution of the Class claims. Neither Plaintiff nor her counsel have interests conflicting with those of the other Class members.

56. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

57. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met, as Keller Williams has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

58. Keller Williams' conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Keller Williams' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

59. The requirements of Fed. R. Civ. P. 23(b)(3) are met as common issues predominate over any individucal issues, and treatment of this matter as a class action is superior to numerous individual actions.

60. The litigation of separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Keller Williams. For example, one court might enjoin Keller Williams from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

## COUNT I

**(Anticipatory Breach of Contract)**

61. Plaintiff incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

62. Plaintiff entered into the IC Agreement with Keller Williams in or around 2014, including the Policies and Procedures which were incorporated therein by reference (collectively, the "Agreement").

63. As an inducement to enter into the Agreement, Keller Williams offered to Plaintiff and the other Class Members the opportunity to become permanently vested in the Profit Sharing Program by being associated with a Keller Williams Market Center for three consecutive years.

64. The Agreement provided that the Profit Sharing Program could not be terminated by Keller Williams.

65. Keller Williams did not have the right to amend any aspects of the methods used to calculate the profit sharing distributions for a recruiting sponsor such as Plaintiff, except as per the specific direction of Keller Williams' IALC, and any such amendment the IALC did make would not affect those profit sharing distributions earned by the sponsor for recruits brought into Keller Williams prior to the amendment.

66. Plaintiff has performed all of the conditions, covenants, and promises required to be performed in accordance with the terms and conditions of the Agreement including participation in the Profit Sharing Program. Plaintiff's performance includes but is not limited to recruiting other associates who contributed to the profitability of

a Keller Williams Market Center, becoming permanently vested in the program by being associated with a Keller Williams Market center for three consecutive years, and paying annual program fees such as the $25 profit share program fee.

67. Defendants breached the Agreement, in an anticipatory manner, by unilaterally enacting a drastic change to the Profit Sharing Program on or about August 16, 2023, and informing profit share plan members in December 2023 of the drastic program change, such that vested agents who joined Keller Williams before April 1, 2020, and who "actively competed" with Keller Williams' brokerages, would have their profit share distribution percentage slashed from 100% to 5%.

68. Defendants further breached the Agreement, in an anticipatory manner, by requiring vested participants to return to work with Keller Williams within six months of receiving the December 2023 notice in order to maintain their distribution from the Profit Sharing Program at 100% of its prior amount.

69. Defendants are able to fulfill the terms of the parties' Agreement but have clearly and positively indicated, by their words and conduct, that they will not meet their contractual requirements.

70. Plaintiff is informed and believes the drastic change will take effect not later than July 1, 2024. The aforementioned changes to the Profit Sharing Program enacted in August 2023, and Defendants' informing Plaintiff of the change in December 2023, constitute an anticipatory breach of the Agreement.

71. As a direct and proximate result of Defendants' anticipatory breach of the Agreement, Plaintiff and the Class Members have suffered and will suffer economic damages. The damages can be calculated with a reasonable degree of certainty in the form of payment of money owed under the Profit Share Program without the unlawful reduction.

## COUNT II

**(Anticipatory Breach of the Implied Covenant of Good Faith & Fair Dealing)**

72. Plaintiff incorporates by reference the allegations in the preceding

paragraphs as though fully set forth herein.

73. The Agreement between Plaintiff and Defendants contains an implied covenant of good faith and fair dealing under which Defendants promised to refrain from doing any act that would cause harm, damage or injury to Plaintiff.

74. Alternatively, the terms of the Profit Share Program gave Keller Williams, under the specific direction of the IALC, the discretionary power to amend any aspects of the methods used to calculate the profit sharing distributions for a recruiting sponsor such as Plaintiff. Keller Williams could not abuse that discretionary power, due to the implied covenant of good faith and fair dealing.

75. Defendants breached the implied covenants of good faith and fair dealing, in an anticipatory manner, by unilaterally enacting a drastic change to the Profit Sharing Program on or about August 16, 2023, and informing profit share plan members in December 2023 of the drastic program change, such that vested agents who joined Keller Williams before April 1, 2020, and who "actively compete" with Keller Williams' brokerages would have their profit share plan distribution slashed from 100% to 5%.

76. Defendants further breached the implied covenant of good faith and fair dealing, in anticipatory manner, by requiring vested participants to return to work with Keller Williams within six months of receiving the December 2023 notice in order to maintain their distribution from the Profit Sharing Program at 100% of its prior amount.

77. As a direct and proximate result of Defendants' anticipatory breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class Members have suffered and will suffer economic damages in an amount to be determined.

## COUNT III

**(Violation of California's Unfair Competition Law)**

78. Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint and further alleges as follows:

79. By committing the acts and practices alleged herein, Keller Williams has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the Class as a whole, by engaging in unfair conduct.

80. **Unfair Conduct.** Keller Williams' acts and practices described above violate the UCL's proscription against engaging in *unfair* conduct.

81. Plaintiff and the other Class members have and will suffer a substantial injury as a result of Defendant's unilateral, drastic reduction of the percentage paid for their profit share plan distributions.

82. The utility of Defendants' conduct is outweighed by the gravity of harm to Plaintiff and the other Class members.

83. There is also no benefit to competition from Defendants' conduct in amending the Profit Sharing Program in the manner alleged herein. In fact, Defendants' conduct is anti-competitive.

84. Moreover, the gravity of the harm caused by Defendants' conduct, as described above, outweighs any justification, motive, benefit or reason therefore. The conduct is also immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other Class members.

85. Plaintiff and the other Class had no way of reasonably avoiding the injury to each of them.

86. Pursuant to California Business and Professions Code § 17203, Plaintiff and the Class seek an order of this Court that includes, but is not limited to, an order (a) enjoining Keller Williams from implementing the drastic change to the profit share plan; (b) providing restitution to Plaintiff and other Class members for any monies wrongfully retained as a result of the change; (c) disgorgement of any profits wrongfully obtained as part of the change, and (d) payment of Plaintiff's and the Class's attorneys' fees and costs.

## COUNT IV
### (Unjust Enrichment)

87. Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint and further alleges as follows:

88. When recruiting sponsors such as Plaintiff and putative class members recruited associates to Keller Williams Market Centers, Keller Williams profited from real estate sales the recruits made. Thus, Defendants received a monetary benefit from real estate transactions made by recruits of the sponsors in its Profit Share Program, and continue to do so, even after the sponsors, who have a lifetime vested interest in the program, leave Keller Williams and become "competing agents." As a result of the drastic 95% reduction in the percentage Keller Williams will pay in distributions to such agents, Defendants have thus been and will be unjustly enriched as a result of their unfair business practice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of herself and the Class as follows:

A. An order certifying the proposed Class; appointing Plaintiff as representative of the Class; and appointing Plaintiff's undersigned counsel as Class counsel;

B. An order determining and declaring Keller Williams has an obligation to continue to pay Plaintiff and Class Members their full 100% vested share under the Keller Williams Profit Share Program;

C. A declaration that Keller Williams is financially responsible for notifying Class members of the pendency of this suit;

D. A Judgment declaring Defendants' conduct breached the terms of the Agreement;

E. An award of restitution pursuant to California Business and Professions Code §§ 17203 and 17535 and California Civil Code § 1780(a)(3) for Class members;

| | | |
|---|---|---|
| F. | an award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for Class members; | |
| G. | Injunctive relief for Class members pursuant to California Civil Code § 1780 and as otherwise ordered by the Court; | |
| H. | Actual damages pursuant to California Civil Code § 1780 (a)(1); | |
| I. | Statutory damages in the maximum amount provided by law; | |
| J. | An order awarding Plaintiff and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and | |
| K. | Any further relief that the Court may deem appropriate. | |

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all claims so triable.

Dated: April 5, 2024                     Respectfully submitted,

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**
By: /s/ *Helen I. Zeldes*
Helen I. Zeldes, Esq. (SBN 220051)
*hzeldes@sshhzlaw.com*
JOSHUA A. FIELDS (SBN 242938)
*jfields@sshhzlaw.com*
AMY C. JOHNSGARD (SBN 279795)
*ajohnsgard@sshhzlaw.com*
AYA DARDARI (SBN 344039)
*adardari@sshhzlaw.com*
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4990